UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DENISE L. T.,[1]<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SOCIAL SECURITY COMMISSIONER,<br><br>　　　　Defendant. | Case No.  21-cv-00902-RMI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 29, 39 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 15-28.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 1-4), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 11, 18), and both parties have moved for summary judgment (dkts. 29, 39). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in seventeen attachments to Docket Entry #15. *See* (dkts. 15-1 through 15-38).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

In February of 2018, Plaintiff filed an application for Title II benefits alleging an onset date of April 30, 2016. AR at 15. Upon an initial determination on July 6, 2018, Plaintiff was awarded disability insurance benefits with a later onset date of December 18, 2017. *Id*. Plaintiff sought reconsideration – such as to secure benefits from her originally-asserted onset date – however, the partially-favorable determination was affirmed on reconsideration. *Id*. Thereafter, Plaintiff requested a hearing before an ALJ, the result of which was the total vacatur of the favorable decision and its replacement with a wholly unfavorable decision which found Plaintiff not to be disabled. *See id*. at 28. On December 1, 2020, the Appeals Council denied Plaintiff's request for review. *Id*. at 1-4. Two months later, in February of 2021, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated.

**SUMMARY OF THE RELEVANT EVIDENCE**

Plaintiff raises seven issues (*see* Pl.'s Mot. (dkt. 29) at 27), all of which are tethered to Plaintiff's request for a remand for further proceedings (*see id*. at 41). However, the court's careful review of the record evidence reveals that the ALJ also committed errors at step two by failing to

analyze – or even mention – Plaintiff's posttraumatic stress disorder ("PTSD"), her anxiety disorder, and her panic disorder, despite the existence of a mountain of record evidence that substantiates and establishes the lengthy history of Plaintiff's struggle with those conditions. Accordingly, the following is a recitation of the evidence relevant to the ALJ's errors in this regard.

Having been victimized during her childhood with sexual abuse, Plaintiff has been afflicted with lifelong symptoms of residual and lingering trauma – those symptoms include nightmares, trauma memories and flashbacks, and suicidal ideations. *See e.g.,* AR at 2044, 2048. Accordingly, the record is quite literally teeming with dozens upon dozens of repeated confirmations of Plaintiff's PTSD diagnosis. *See id*. at 75-77, 93, 108, 113, 445-46, 448, 452, 455, 457, 459, 461, 463, 466, 468, 488, 491-92, 494-97, 501, 505, 514, 566, 567, 575, 763, 953, 1074, 1076, 1132, 1136, 1143, 1174, 1176, 1207, 1212, 1215, 1218, 1226, 1228, 1230, 1289, 1312, 1340, 1353-54, 1361, 1374, 1380, 1386, 1397, 1423, 1425, 1449, 1457, 1482, 1487, 1519, 1540, 1540, 1542, 1552, 1559, 1565, 1612-13, 1647, 1654-55, 1657, 1666, 1676, 1693-94, 1711, 1768, 1806, 1841, 1845, 1849, 1852, 1855, 1886, 1895, 1901, 1917, 1939, 1940, 1945, 1954, 1960, 1966-67, 1986, 1988, 1994, 1996, 1998, 2000, 2002, 2020, 2029, 2031-32, 2041, 2043-44, 2047, 2069, 2071, 2073, 2079, 2081, 2083, 2085, 2091, 2112, 2115, 2117-18, 2120, 2145, 2148, 2153, 2155, 2159-62.

Similarly, Plaintiff has repeatedly been assessed as suffering from anxiety disorder as well. *See* AR at 75-77, 93, 96-97, 108, 114, 445-46, 452, 488, 492, 501, 505, 510-13, 515, 565-66, 567, 573, 579, 705, 708-10, 736-37, 742-50, 755, 760, 765-66, 1132, 1143, 1215, 1361, 1374, 1449, 1457, 1487, 1519, 1540, 1557, 1559, 1583, 1587, 1589, 1677, 1702, 1737, 1750, 1763, 1852, 1918, 1940, 1945, 1954, 1960, 2047, 2074, 2146, 2153. It should also be noted that, on a number of other occasions, treatment providers have assessed Plaintiff as suffering from symptoms consistent with a panic disorder as well. *See id*. at 505, 742-50, 755, 1469.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically

3

determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*id*. § 416.920; *see also id*. at § 404.1520). While the claimant bears the burden of proof at steps one through four (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 16-17.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ determined Plaintiff had not performed substantial gainful activity during the relevant period. AR at 17. At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: degenerative arthritis of the knees, obesity, migraine headaches, asthma, depressive disorder, and obsessive-compulsive disorder. *See* AR at 18.

At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered to be sufficiently severe to prevent any individual so afflicted from performing any gainful activity. *Id*. at § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. at § 404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it must meet all of the specified medical criteria; and, an impairment that manifests only some of

4

those criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are determined to be medically equivalent to the severity of that set of criteria, that person is conclusively presumed to be disabled without a consideration of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or equals the criteria or the severity of any of the listings. *See* AR at 18-20.

If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's residual functional capacity ("RFC"), which is defined as the most that a person can still do despite the limitations associated with their impairments. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the ability to perform work at the light exertional level with certain postural and environmental exceptions, and with an additional limitation allowing for only occasional interaction with the public. *See* AR at 20-26.

Following the formulation of the RFC, the ALJ must determine – at step four – whether the claimant is able to perform her past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id*. § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that the claimant can perform a significant number of other jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2; or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE"). *Ford*, 950 F.3d at 1149. A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. §

404.1560(b)(2). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id*. Here, the ALJ determined – based on the VE's testimony – that Plaintiff could not perform her past relevant positions as a nanny, merchandise delivery person, an office manager, or a shuttle driver. *See* AR at 26. At step five, again based on the VE's testimony, the ALJ determined that Plaintiff could fulfill the functions of a data entry clerk or a general office clerk. *Id*. at 27. Accordingly, the ALJ determined that Plaintiff had not been disabled at any time during the relevant period. *Id*. at 28.

## DISCUSSION

As mentioned above, at step two, the ALJ found that Plaintiff's severe impairments were limited to: degenerative arthritis of the knees, obesity, migraine headaches, asthma, depressive disorder, and obsessive-compulsive disorder. *Id*. at 18.[3] However, despite a virtual mountain of record evidence that substantiated Plaintiff as also suffering from other chronic and severe impairments (PTSD, anxiety disorder, and possibly also panic disorder), the ALJ failed to discuss or analyze those conditions at step two or beyond. *See id*. at 18-27. Accordingly, the ALJ's step

---

[3] Although no party has raised a step two error, or asserted that the ALJ failed to properly develop the record, the court can, and should, raise and address those issues *sua sponte* because the court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence – and to take any consequentially necessary action. *See Sims v. Apfel*, 530 U.S. 103, 110 (2000) (explaining that an appeal from the denial of Social Security benefits is quite unlike ordinary civil litigation because the underlying claims process before the ALJ is not adversarial). While claimants must carry the burden of demonstrating that they qualify for benefits, the law does not leave them entirely to their own devices; as such, lapses and omissions in pleading or procedure cannot be relied upon to withhold or delay benefits from a claimant who may otherwise be entitled to them. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999). While a plaintiff must make his or her own arguments for remand, that does not relieve this court of its independent duty to undertake a fulsome and searching review of the facts in order to render a thoroughgoing and independent determination as to whether the ALJ's findings are supported by substantial evidence, as well as ascertaining the upshot of such a determination. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). Thus, the failure by Plaintiff or her counsel to raise an error is not an acceptable reason for a court to actively ignore it. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare*, 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2nd Cir. 2009). Other courts faced with this issue have arrived at a similar conclusion. *See e.g.*, *Farley v. Colvin*, 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017) (collecting cases); *see also Cortes v. Berryhill*, No. 3:16-cv-01910 (JCH), 2018 U.S. Dist. LEXIS 45256, 2018 WL 1392903, at *2-6 (D. Conn. March 19, 2018); *Peterson v. Comm'r of Soc. Sec.*, No. 16-2912, 2018 U.S. Dist. LEXIS 26355, 2018 WL 953345, at *1 n.1 (D. N.J. Feb. 20, 2018); *Taylor-Tillotson v. Colvin*, No. 13-80907-CIV-WM, 2014 U.S. Dist. LEXIS 177510, 2014 WL 7211888, at *13 (S.D. Fl. Dec. 18, 2014); *Mangan v. Colvin*, No. 12 C 7203, 2014 U.S. Dist. LEXIS 120515, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014); *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 452 n.24 (N.D.N.Y. 2005).

two determination was not based on substantial evidence.

The ALJ's errors regarding these impairments were two-fold. First, the court will note that the ALJ's step two error was not harmless because these conditions were neither considered during the step three analysis – which is particularly troubling because Plaintiff's major depressive disorder, by itself, nearly satisfied the criteria of Listing 12.04 by meeting the Subpart A criteria with 5 or more characteristics of depression (*see id*. at 77) (opinion of state agency consultant), and it appears highly likely that when combined with Plaintiff's omitted mental impairments (and the limitations attending her physical impairments), the combination of these conditions will likely equal the severity of one or more listings (*e.g.*, 12.04, 12.06, or 12.15). At step three, while the ALJ performed a flawed and incomplete analysis (by failing to first develop the record, as described below) under Listings 12.04 (depression) and 12.06 (anxiety) – *see* AR at 18-20 – the ALJ's step three analysis did not even mention, let alone analyze Plaintiff's PTSD under Listing 12.15 (trauma and stressor-related disorders).

The symptoms associated with Plaintiff's anxiety disorder include nervousness, social anxiety, persistent worry, irritability, insomnia, persistent fatigue, grogginess during the daytime, becoming easily overwhelmed, low energy, unable to complete tasks, and difficulty with self-care. *See id*. at 1540, 1737, 2153. Furthermore, on numerous occasions, her anxiety disorder has been described as chronic and severe. *See id*. at 1750, 1763, 2074, 2146. Her PTSD symptoms include nightmares, trauma memories, suicidality, hyper-vigilance, hyper-arousal, difficulty with sleep, avoidance behavior, impulsivity, self-harm / self-mutilation, anhedonia, decreased energy, poor concentration, feelings of guilt, appetite changes, and psychomotor retardation. *See id*. at 1540, 1724, 1737. As to her PTSD, Plaintiff also frequently experiences painful and debilitating flashbacks to her childhood trauma during group therapy or at other times when external events serve as triggers. *Id*. at 2048. In short, none of these symptoms were evaluated at step three, nor were they factored into the RFC, as the RFC's only relevant limitation ("occasional interaction with the public" – *see id*. at 20) was clearly inadequate to account for the totality of these symptoms.

Step two's evaluation is a *de minimis* test intended to weed out patently groundless claims

and the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de minimis* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (step-two is a "*de minimis* threshold"). An impairment is non-severe at step two only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290. As for the three impairments that the ALJ omitted from this analysis, those errors cannot be suggested to be harmless because a review of the ALJ's decision makes it clear that none of their attendant conditions were considered at step three, or during the formulation of the RFC, or beyond. In other words, the omission of these impairments from the sequential analysis process clearly impacted the ALJ's ultimate non-disability decision (as the record reflects significant limitations attending those conditions). *Stout v. Comm'r, Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (explaining that an error is harmless only if it is not prejudicial to the claimant, or is otherwise inconsequential to the ALJ's ultimate non-disability determination). Thus, Plaintiff's anxiety disorder, her PTSD, and her panic disorder – coupled as they are with a large list of debilitating symptoms – are clearly not the sort of groundless claims that step two is designed to weed out – nor was their omission harmless because overlooking these conditions was not inconsequential to the ALJ's ultimate non-disability determination. *See Berg v. Saul*, 831 F. App'x 849, 850 (9th Cir. 2020); *Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020).

   The second manifestation of the ALJ's error regarding these three mental impairments is evident in the ALJ's failure to properly develop the record such as to allow for a fair and reliable disability determination regarding the impairments' associated limitations. Despite the overwhelming evidence of three serious impairments that are attended with a host of severe symptoms – the record is nearly totally undeveloped as to the consequential limitations associated with these symptoms. Neither did the ALJ arrange for a consultative psychological or psychiatric examination with a view towards identifying a list of work-related limitations associated with these conditions, nor did the ALJ communicate with any of Plaintiff's several treatment providers to secure their opinions – through medical source statements – about the work-related limitations

associated with these impairments. Of course, the ALJ's failure to develop the record in this regard was exacerbated by the fact that Plaintiff proceeded through the administrative process without counsel (she was represented by a non-attorney), and also by the fact that Plaintiff suffers from a series of mental impairments – both of which conditions heightened the ALJ's duty to fully develop the record such as to ensure that Plaintiff's interests were protected and to allow for a fair disability determination.

Because administrative proceedings in social security matters are inquisitorial, rather than adversarial, ALJs have an independent and special duty to fairly develop the record in order to ensure that the claimant's interests are considered. *See generally Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty extends to claimants that are represented as well as to those who are unrepresented; however, "[w]hen the claimant is unrepresented, [] <u>the ALJ must be especially diligent in exploring for all the relevant facts</u>." *Id*. (emphasis added) (explaining further that, "[i]n this case, Tonapetyan was represented, but by a lay person rather than an attorney."); *see also Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The duty to engage in even further record development is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence – as is the case here. *Id*. (citing *Tonapetyan*, 242 F.3d at 1150). This duty – "to develop the record fully" – is still further "heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id*. Furthermore, "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry,'" which "[t]he ALJ may discharge [] in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*. (citations omitted). The ALJ's failure to develop the record in this case violated all of these teachings. Plaintiff was represented by a lay person, the record was teeming with evidence of mental impairments that were effectively ignored, the record was totally undeveloped as to the limitations associated with the ignored impairments, and despite the heightened duty, the ALJ failed to discharge his obligation "to develop the record fully" as set forth in *Tonapetyan*.

On remand, the ALJ is **ORDERED** to convene another hearing at which Plaintiff (and any other interested witnesses) shall appear and be questioned at length regarding the limitations she experiences as a result of *each* of her mental and physical impairments (especially the three mental impairments that were effectively ignored). The ALJ is also **ORDERED** to either subpoena each and every one of Plaintiff's treating physicians to testify at that hearing regarding the limitations associated with *each* of her impairments, or to send questionnaire(s) to all of those treatment providers, such as to pose an exhaustive and thorough list of questions regarding the limitations attending each and every impairment with which Plaintiff is afflicted – including the three mental impairments that were ignored.

Also, because it appears that the ALJ's decision effectively ambushed Plaintiff by finding her pain and symptoms testimony to be non-credible because (for example) the ALJ found that Plaintiff could "prepare simple meals, do the laundry, wash dishes, drive, go out alone, shop in stores, watch television, knit, make crafts, use a smartphone, and talk with her children on the phone" (*see* AR at 26), but without confronting Plaintiff with these concerns (*see* Hearing Tr., *id*. at 39-59), the ALJ is **FURTHER ORDERED** to develop the hearing record in a much more fulsome manner by questioning Plaintiff and any other witnesses – including each of her treatment providers – exhaustively about each and every item of record evidence that the ALJ relied upon for discrediting testimonial statements from Plaintiff and other lay witnesses, as well as confronting every reviewing, examining, or treating physician or other provider, with each and every item of evidence relied upon for finding that Plaintiff's conditions were only attended with the modest limitations that the ALJ enshrined in the RFC. In short, unless Plaintiff is found disabled on remand, the ALJ is **ORDERED** to ensure that any forthcoming opinion finding Plaintiff not disabled clearly sets forth the explanations that were provided by each lay witness and by each consulting, examining, or treating source as to each item of evidence that the ALJ previously relied upon for discrediting that testimony or finding those opinions to be unpersuasive. This is the degree of thoroughness that was contemplated in *Tonapetyan* when commanding ALJ's to develop the record "fully" in cases such as this.

Lastly, the court declines to reach the seven claims raised by Plaintiff for several reasons.

First, because it appears quite likely that the nature of Plaintiff's asserted claims will substantially change on remand, there is no need to discuss them as currently formulated. Second, because the case is already being remanded for further proceedings – which is the only relief Plaintiff seeks (*see* Pl.'s Mot. (dkt. 29) at 41) – the court finds it unnecessary to address Plaintiff's remaining issues as they can adequately be addressed on remand and because any favorable rulings thereto will not secure for Plaintiff any relief beyond what has already been granted. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."). In any event, on remand the Commissioner is **ORDERED** to consider the issues raised in Plaintiff's briefing and to modify any ensuing ALJ opinion such as to clearly reflect the fact that all the issues raised in this case by Plaintiff have been considered and addressed pursuant to the instructions set forth by the undersigned herein. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 U.S. Dist. LEXIS 52225, at *16-17 (N.D. Cal. Mar. 19, 2021).

## CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (dkt. 29) is **GRANTED**, Defendant's Cross-Motion (dkt. 39) is **DENIED**, and the case is remanded for further proceedings consistent with the findings and conclusions set forth herein.

**IT IS SO ORDERED.**

Dated: September 29, 2022

ROBERT M. ILLMAN
United States Magistrate Judge